UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| KEITH BRIAN HUNTER | ) | Case No. 08-35576 |
| | ) | Chapter 13 |
| | ) | |
| Debtor | ) | |
| | ) | |

## OBJECTION TO MOTION TO DISMISS

Comes now the debtor herein, Keith Brian Hunter (the "Debtor"), by counsel, and hereby objects to Citizens Union Bank's ("CUB") motion to dismiss this Chapter 13 case. In further support of the motion, the Debtor states as follows:

Introduction

CUB bases its motion to dismiss essentially on the grounds that: 1) Debtor has concealed assets, 2) Debtor has not paid taxes for various years, and 3) Debtor has not made payments into its Chapter 13 plan.  Debtor objects to the motion because the deficiencies alleged either have been cured or have been overblown by CUB.

There is no evidence of bad faith in Hunter's Petition or his conduct. If anything CUB has acted in bad faith for falsely representing to this Court the documents and information relied upon in consummating its transactions with Hunter and for concealing the true value of Hunter's property at 1420 S. 4th St.

The chronology provided by CUB is misleading and unsupported by the record.  It is evident that CUB is attempting to distort the facts of in order to paint Hunter with a negative brush in hopes of persuading this Court to deny Hunter the relief he is requesting.  The real facts

are far different from CUB's recitation. Hunter did not act in bad faith and should be allowed to proceed with the proposed plan.

## COUNTERSTATEMENT OF FACTS

Hunter is a licensed attorney in good standing with a license to practice in the Commonwealth of Kentucky. Hunter maintains a private practice. His cases primarily involve Civil Rights litigation and personal injury. Hunter is also employed as a Jefferson County Prosecutor on a part-time basis.

Hunter owned property at 1420 S. 4th St., Louisville, Kentucky. Hunter purchased this property in 1988. It is approximately 5,400 square feet and 120 years old. When purchased it was a gutted shell with only a roof, rear deck and some original interior, framing, mantles and trim. The completed renovation took approximately one year. Hunter moved into the property on or about December 1, 1989. Hunter resided there for nearly twenty years, until September 2009 when CUB instituted eviction proceedings.

CUB provided financial services, a mortgage, to Hunter for the 1420 S. 4th St. property. Hunter filed an application for a loan. Hunter did not provide tax returns and was not required to do so. Kim Sanderson was the loan officer for CUB. Ms. Sanderson was personally familiar with Hunter's property. She was a business associate of Wayne Gallavin who resided at Hunter's property for several years. As a result, Hunter and Ms. Sanderson also became acquainted. With the approval of Ms. Sanderson and other CUB officials Hunter was given a "no document" loan. CUB relied upon a credit report, information related to a lawsuit won by Hunter and financial information in the form of bank statements in deciding whether to grant Hunter a loan. CUB also relied on a jury verdict from *Hill v. Kentucky Lottery,* a case won by Hunter in late 2002. **See**

**Exhibit 1, attached.** CUB did in fact provide a mortgage for the property. From 2003 through 2005 CUB provided one year renewable mortgages. Finally, in 2006 CUB indicated that it would not renew the mortgage at the end of the term. At this same time Hunter was experiencing financial difficulties because of the length of time to bring the *Hill* case to a conclusion. CUB required payment in full which Hunter was unable to secure. CUB filed a foreclosure action and initiated eviction proceedings related to the See Jefferson Circuit Court styled No. 07CI-10539 *Citizens Union Bank v. Keith B. Hunter, et al* Division Two.

In 2003, CUB required an appraisal of 1420 S. 4th St., prior to granting Hunter a loan. The appraisal indicated the property was worth approximately $440,000.00. **See Exhibit 2, attached.** In the underlying foreclosure proceeding and in this Court CUB represented that the value of the property was worth $300,000. Hunter filed a Motion for a Right of Redemption in April 2009. Hunter argued that the property was worth over $550,000. CUB argued that the property was worth $300,000 and that Hunter was not entitled to a Right of Redemption. Clearly, CUB would not have granted Hunter a loan for $300,000 on property that was only worth $300,000. CUB's objection was made in bad faith. CUB hired an appraiser who evaluated the property in June 2009. CUB's appraiser determined that the property was worth $570,000. **See Exhibit 3, attached.** The trial court awarded Hunter a Right of Redemption. **See Exhibit 4, attached.** CUB has ownership of 1420 S. 4th St. with equity of over $270,000 above the amount it paid for the property at foreclosure. In fact, CUB currently lists the property for sale with Semonin Realtors with an asking price of $575,000. CUB is complaining the loudest yet it has an asset worth significantly more than what it and the IRS are owed combined.

As previously mentioned, Hunter's private practice involves among other things, Civil Rights litigation. In August 2000, Hunter filed a Civil Rights action on behalf of a wrongfully

3

terminated couple employed by the Kentucky Lottery Corporation in Jefferson Circuit Court styled, No. 00 CI 4922 *Hill v. Kentucky Lottery Corporation, Division* Eight. The case was tried before a jury in December 2002. The jury returned a verdict for the plaintiffs in the amount of $4,352,316.

In August 2003, the trial court set aside the award but still held the defendant liable. In so doing, the trial court ordered a new trial on liability only for the Civil Rights claim which was heard in August 2004. At the new trial the jury returned a verdict for $235,500.00 for the plaintiffs. In December 2004, the trial court entered an order for an award of attorney fees in the amount of $212,959.87. **See Exhibit 5, attached.**

In January 2005, this matter was appealed to the Kentucky Court of Appeals. In September 2006, the Court of Appeals ruled in favor of the defendant and upheld the second judgment of $448, 459.87.

In October 2006, the plaintiffs filed a Motion for Discretionary Review with the Kentucky Supreme Court. The Kentucky Supreme Court granted plaintiff's motion for Discretionary Review. The Case was argued before the Supreme Court on June 17, 2009. A decision is pending from the Supreme Court possibly as soon as April 22, 2010, the next day the Supreme Court renders decisions.  Hunter believes that the Supreme Court could render a favorable decision and reinstate the initial jury verdict of $4,352,316.

.       CUB's reference to issues regarding Hunter's application for a loan is nothing more than an attempt to create an issue where none exist. The loan application was a formality, as CUB's decision to make a loan to Hunter was based upon his credit status, his income and the potential income from the *Hill* case. Moreover, if there were any suits pending against Hunter, CUB was aware of the same. It should be no surprise that CUB conducted a credit check. The credit report

4

would have revealed any issues for which it now complains. Those matters, if any, were resolved prior to the loan. CUB knows this and it is disingenuous to make the argument that Hunter acted in bad faith when in fact CUB approved Hunter's loan with full knowledge of any litigation. If some or all of the information in the application was inaccurate CUB certainly would have discovered this prior to loaning Hunter money or renewing his loan over the course of five years. CUB's loan officer was a personal friend of Hunters. If there was anything wrong with his application she would have easily recognized the issue because of her familiarity with the property and Hunter. CUB has no legitimate basis for challenging anything in Hunter's loan application. CUB repeatedly renewed the loan.

The same is true for taxes owed by Hunter. The IRS filed a tax lien immediately prior to closing on the mortgage for 1420 S. 4th St. in June 2003. **See Exhibit 6, attached.** Hunter used $15,000 from the proceeds of the closing to pay a portion of the tax debt. **See Exhibit 7, attached.**[1] It is disingenuous for CUB to claim ignorance as to any tax matters or litigation involving Hunter prior to providing a mortgage loan to Hunter.

CUB also attempts to take issue with Hunter's tax returns for several years. The record in this matter is clear, Hunter relied on his accountant to prepare and file tax returns on his behalf as he had done for most of the last twenty years. Hunter believed this was accomplished but later found out that returns had not been prepared or filed for several years. To the best of his understanding it appeared that Hunter's accountant was experiencing a series of personal crisis which prevented him from preparing Hunter's tax returns as agreed. CUB's allegation of questionable practices in Hunter's tax returns is yet another example of unsupported innuendo. Hunter's accountant, who is a certified public accountant and prepared his returns in accordance

---

[1] The IRS claimed that $30,000 was owed for tax years 1993-95. Hunter contested this assessment and it was later determined to be in error.

5

with acceptable accounting practices. Simply stated, CUB is wrong and it has not provided an opinion from an expert to support its position. **See Exhibit 8, attached**.

CUB's allegation that Hunter concealed assets is without merit. It would be an understatement to reiterate that this situation is not asset driven. Hunter would not have sought bankruptcy protection if the *Hill* case was resolved in a timely manner. The record is uncontroverted, CUB evicted Hunter in September 2009. The trial court entered an Order of Eviction on or about August 28, 2009. **See Exhibit 8, attached.** Hunter received notice a few days thereafter from counsel for CUB. At or about the same time a Jefferson County Sheriff appeared at Hunter's door with a notice of eviction. The Sheriff informed Hunter that he had less than 48 hrs to leave or have all household belongings set out on the street.

Hunter was living in a 5,400 hundred square foot house. With little notice Hunter was forced to move into a small apartment of less than 500 square feet. The choice was simple, sell everything for what he could get or have the items set out on the street for anyone to pilfer through and take for nothing. CUB created this situation with the eviction and it is amazing that it should now complain that assets were disposed of and that Hunter received very little for the property. This was not bad faith.

With respect to the property in Pennsylvania, this was an oversight as this property is the residence of Hunter's 85 year old mother. It is the same residence she has maintained for approximately 45 years and treated as a trust property for her by Hunter. It is a small single family dwelling in southwestern Pennsylvania where the economy and community is severely depressed. The value of the house is less than $15,000. The property should not have been included on Hunter's recent tax return as it was taken out of service in 1996. **See Exhibit 8, attached.**

CUB also complains of tax returns for several years including 2004 through 2007. Those returns were not timely filed for reasons set forth above. It does not appear that taxes were owed for those years. Hunter owes taxes for 2008. Hunter is entitled to a refund for 2009 in the amount of $1,666. Hunter's tax liability is less than the amount stated by CUB. Hunter is current in filing all tax returns.

Hunter previously filed bankruptcy. CUB was aware of this fact too as it was listed on Hunter's credit report. Hunter filed a motion to dismiss the bankruptcy as all pending matters were amicably resolved. Any indication to the contrary in Hunter's Petition filed in December 2008 is merely an oversight not intended to mislead this Court.

Finally, in addition to the lengthy delay in resolving the *Hill* case Hunter faced financial problems because of a lengthy illness. In 2008, Hunter unexpectedly contracted a virus which attacked his heart causing a condition known as viral cardio myopathy. This disease is not only debilitating but in many instances is fatal. In late 2008 Hunter's condition was so severe that he medically qualified for disability and a heart transplant. Obviously, Hunter was unable to work on a full time basis and for all intents and purposes did not maintain a private practice from late 2008 through 2009. In late 2009 Hunter's condition improved to the point he could resume a modified light private practice. Many of the same restrictions remain including not lifting anything heavier than 10 pounds and minimizing the stress level which accompanies the legal profession.

Hunter has not acted in bad faith in any respect as alleged. Much of what is complained of by CUB is without merit or minor oversights in the course of trying to work through these difficult times. Hunter is in the unique position of having a clear opportunity to resolve all financial issues in a very short period of time, perhaps as soon as April 2010. Bankruptcy allows

this to occur in an orderly fashion when the proceeds from the *Hill* case are distributed and while Hunter physically recovers from a near fatal condition.

Argument

**I. Debtor Has Not Concealed Any Assets.**

Debtor has not concealed assets as alleged by CUB. CUB has alleged that Debtor failed to disclose to the Court his interest in a parcel of real estate in Pennsylvania and his interest in various lawsuits.

In regard to the Pennsylvania parcel of real property that CUB alleges is owned by Debtor, located at 116 Smithfield Street, Pennsylvania (the "Pennsylvania Property"), as explained above, Debtor does have a bare legal interest in the Pennsylvania Property but his mother has the equitable interest. Debtor's mother has resided in the Property for over twenty (20) years. Debtor has not resided in the Pennsylvania Property since he was in graduate school over twenty years ago

As far as the lawsuits listed by CUB, the cases are contingency cases and are either at a stage where it is too early to determine what the potential outcome/income will be or the fees owed may be uncollectible. As stated above, several of the lawsuits were disclosed to CUB when Debtor applied for financing.

**II. Debtor Has Filed Tax Returns for Pre-petition Periods.**

Due to a lack of response from his accountant, Debtor failed to file some of his pre-petition tax returns but believes that all of those deficiencies have now been cured. However, in order to get to that point, Debtor was forced to file a motion to compel production of the returns from his accountant. Upon the accountant's compliance with the motion to compel, Debtor

8

immediately filed the returns. Obviously, there was a delay in filing but it was caused by Debtor's accountant's dilatoriness, not the Debtor's.

### III. Debtor Shall Cure Any Chapter 13 Payment Deficiencies By the Court's Deadline.

This Court has ruled that Debtor would have up to and including April 1, 2010 to bring his Chapter 13 plan payments current. Debtor expects to have those payments brought current by the Court's deadline.

### Conclusion

The fact that debtor has produced the required tax returns and shall produce sufficient funds to bring his plan current shows that Debtor has not acted in bad faith in filing this Chapter 13 bankrutpcy or in proposing his Chapter 13 plan. Debtor is working diligently to produce income sufficient to continue to fund his plan and repay his creditors a reasonable portion of what they are owed.

**WHEREFORE**, in light of the foregoing, the Debtor, by counsel, respectfully requests that this Court overrule CUB's motion to dismiss.

Respectfully Submitted,

/s/ *Gordon A. Rowe, Jr.*
Gordon A. Rowe, Jr.
Counsel for Debtor
Suite 1430, Starks Building
455 South Fourth Avenue
Louisville, KY 40202
502-584-1300
e-mail:g3rowelaw@aol.com

**CERTIFICATE OF SERVICE**

       Comes now the undersigned and hereby certifies that a copy of the foregoing objection, along with a tendered order, was served this 1st day of April 2010, via electronic correspondence and/or first class mail upon all persons who have properly requested such service, and specifically upon the following persons:

William Lawrence
Chapter 13 Trustee
310 Legal Arts Building
200 S. Seventh Street
Louisville, KY 40202

Cathy S. Pike
Michael R. Gosnell
Weber & Rose
Suite 400
471 W. Main Street
Louisville, KY 40202
*Counsel for Citizens Union Bank*

                /s/ *Gordon A. Rowe, Jr.*
                Gordon A. Rowe, Jr.