# Metro

## The Courier-Journal

www.courier-journal.com

**Thursday, December 19, 2002**

# B

Neighborhood news ............ B2
Kentucky and the Region ...... B4
Weather .......................... B4
Briefs ............................. B3, 4
Deaths ............................ B6, 7

Editor: Jean Porter
jporter · courier-journal.com
Phone: 582-4691 / Fax: 582-4200

# Paducah couple awarded $4.3 million from lottery

## Jefferson jury: Agency wrong to fire them

By GREGORY A. HALL
ghall@courier-journal.com
The Courier-Journal

A Jefferson Circuit Court jury awarded a husband and wife more than $4.3 million last night in a lawsuit that claimed that the Kentucky Lottery Corp. wrongfully fired them.

Bob and Kimberly Hill of

Paducah, who had worked in years for the lottery, claimed they were terminated shortly after Kimberly Hill testified on behalf of a blind colleague who alleged discrimination.

According to the lawsuit, lottery officials pressured Kimberly Hill to testify falsely at an unemployment-compensation hearing for the colleague, Edward Gilmore.

Kimberly Hill said she hopes the verdict encourages other lottery officials told Kimberly Hill she was being fired for reporting work she had not done, falsifying work records and allowing her husband to use her company gas card to fill up a company vehicle. Bob Hill was told he was being terminated

The Hills filed the case in August 2000.

Both said they have been unable to find jobs since being terminated because of the cloud hanging over them. Now, they said, they hope they can move on with their lives.

The verdict totaled $4,352,316.

According to the lawsuit, lottery officials told Kimberly Hill she was being fired for reporting work she had not done, falsifying work records and allowing her husband to use her company gas card to fill up a company vehicle. Bob Hill was told he was being terminated

for using the gas card, the lawsuit said.

The jury voted 9-3 that the lottery wrongfully fired Kimberly Hill and that it was done in retaliation.

On a 10-2 vote, the jury found the same regarding Bob Hill. At least nine jurors had to agree for a verdict.

The jury unanimously found that lottery officials had defamed both Hills by making false accusations in termination letters, which were provided to a television station.

The jury awarded Kimberly Hill $167,866 in past and future wages, $500,000 for embarrass-

ment and humiliation, and $1 million in punitive damages.

The jury awarded Bob Hill $654,450 in past and future wages, $1 million for embarrassment and humiliation, and $1 million in punitive damages.

"Justice has been served," said Keith B. Hunter, one of the Hills' attorneys. He also represented Gilmore.

The Kentucky Lottery won a summary judgment in Gilmore's discrimination case, Hunter said last night, and the Kentucky Court of Appeals has affirmed that decision. Hunter said he plans to ask the Kentucky Supreme Court to review

Gilmore's case.

Attorneys for the lottery declined to comment on the Hill verdict in the courtroom, referring questions to a spokesman who was not present. The spokesman promised to send a statement by e-mail, but none had come by yesterday evening.

Larry Ziehke, an attorney for the Hills, said the jury saw through the lottery's "cover story."

"I think this jury wanted to send a message" for comp anies not to punish employees who tell the truth, he said.

Kimberly Hill said she hopes the verdict encourages other employees to tell the truth.

"It's been a really hard road," she said.

"We feel vindicated," Bob Hill said.

00CI4922                                                          JEFFERSON CIRCUIT COURT
                                                                 DIVISION SIX (6)


KIMBERLY G. HILL AND                                             PLAINTIFFS
ROBERT W. HILL


VS.                              FINAL JUDGMENT
                          IN FAVOR OF ROBERT W. HILL


KENTUCKY LOTTERY CORPORATION                                    DEFENDANT


                          * * * * * * * *


        This matter having come before the Court for trial by jury on December, 2, 2002, and

a jury having rendered its verdict on December 18, 2002, and the Court being otherwise

sufficiently advised, judgment is hereby entered by the Court as follows:

        IT IS HEREBY ORDERED that judgment is entered in favor of Plaintiff, Robert W.

Hill against the Defendant, The Kentucky Lottery Corporation based upon the jury's

verdict in the following amounts:

        1   For past wages                                      $  154,450.00

        2   For future wages                                    $  500,000.00

        3   For embarrassment, humiliation, and mental anguish  $1,000,000.00

        4   For punitive damages                                $1,000,000.00

                                          TOTAL                 $2,654,450.00

        IT IS FURTHER ORDERED that Plaintiff, Robert W. Hill shall recover any costs in

this action and any attorney fees in this action pursuant to K.R.S. 344.450. The Court

shall retain jurisdiction to determine the amount of any costs and fees.

IT IS FURTHER ORDERED that this judgment shall bear interest at the at the rate of

12 percent from the date of entry.

AND, IT IS SO ORDERED.

_____

JUDGE STEPHEN P. RYAN

ENTERED IN COURT

MAY 1 2 2003

TONY MILLER, CLERK

By _____
                            Deputy Clerk

cc:  Keith Hunter\Laurence Zielke
     Jonathan Goldberg\Jan West

00CI4922

JEFFERSON CIRCUIT COURT
DIVISION SIX (6)

KIMBERLY G. HILL AND                                            PLAINTIFFS
ROBERT W. HILL

VS.                 FINAL JUDGMENT
                 IN FAVOR OF KIMBERLY G. HILL

KENTUCKY LOTTERY CORPORATION                 DEFENDANT

. . . . . . . .

This matter having come before the Court for trial by jury on December, 2, 2002, and

a jury having rendered its verdict on December 18, 2002, and the Court being otherwise

sufficiently advised, judgment is hereby entered by the Court as follows:

IT IS HEREBY ORDERED that judgment is entered in favor of Plaintiff, Kimberly G.

Hill, against the Defendant, The Kentucky Lottery Corporation based upon the jury's

verdict in the following amounts:

| | | |
|---|---|---|
| 1 | For past wages | $ 113,866.00 |
| 2 | For future wages | $ 84,000.00 |
| 3 | For embarrassment, humiliation, and mental anguish | $ 500,000.00 |
| 4 | For punitive damages | $1,000,000.00 |
| | TOTAL | #1,697,866.00 |

IT IS FURTHER ORDERED that Plaintiff, Kimberly G. Hill shall recover any costs

in this action and any attorney fees in this action pursuant to K.R.S. 344.450. The Court

shall retain jurisdiction to determine the amount of any costs and fees.

IT IS FURTHER ORDERED that this judgment shall bear interest at the at the rate of

12 percent from the date of entry.

AND IT IS SO ORDERED.

JUDGE STEPHEN P. RYAN

ENTERED IN COURT

MAY 1 2 2003

TONY MILLER, CLERK
By
Deputy Clerk

cc:  Keith Hunter\Laurence Zielke
     Jonathan Goldberg\Jan West

## APPRAISAL INVOICE

Date:   May 3, 2003

File No.:        030323

Prepared for:

Citizens Union Bank
1854 Midland Trail
Shelbyville, KY 40065

Property Appraised:

Keith Hunter
1490 S. 4th Street
Louisville, KY 40208

Work Performed:

| | |
|---|---|
| for appraisal services rendered: | |
| full appraisal/exceptional property | 350.00 |
| | |
| | |
| | |
| **Total Amount Due:** | $350.00 |

Please make checks payable to:

Leslie R. Bright
406 Belgravia Court
Louisville, KY 40208

2

# APPRAISAL REPORT

## OF

Keith Homes

1420 S. 4th Street

Louisville, KY 40208

## AS OF:

May 7, 2003

## PREPARED FOR:

Citizens Union Bank
1854 Midland Trail
Shelbyville, KY 40065

## PREPARED BY:

Leslie R. Bright
KY Certified Appraiser #000207
466 Belgravia Court
Louisville, KY 40208



# UNIFORM RESIDENTIAL APPRAISAL REPORT
File No. 030122

**SUBJECT**

| Property Description | | | | |
|---|---|---|---|---|
| Property Address 1120 S. 4th Street | City Louisville | State KY | Zip Code 40208 | |
| Legal Description Deed bond, 7843, Page 247 | | | County Jefferson | |
| Assessor's Parcel No. 0335-0130-0000 | Tax Year 2001 | R.E. Taxes $ 1,000 | Special Assessments $ None | |
| Borrower Keith Hunter | Current Owner Key Land Trust | Occupant ☒ Owner ☐ Tenant ☐ Vacant | | |
| Property rights appraised ☒ Fee Simple ☐ Leasehold | Project Type ☐ PUD ☐ Condominium (HUD/VA only) | HOA $ 0 /Mo. | | |
| Neighborhood or Project Name Old Louisville | Map Reference M13 Area 01 | Census Tract 4520/0052.00 | | |
| Sale Price $ Market value Date of Sale n/a | Description and $ amount of loan charges/concessions to be paid by seller None/None | | | |
| Lender/Client Citizens Union Bank | Address 1854 Midland Trail, Shelbyville, KY 40066 | | | |
| Appraiser Leslie R. Bright | Address 306 Belgrave Court, Louisville, KY 40208 | | | |

| Location ☒ Urban ☐ Suburban ☐ Rural | Predominant occupancy | Single family housing | Present land use % | Land use change |
|---|---|---|---|---|
| Built up ☒ Over 75% ☐ 25-75% ☐ Under 25% | | PRICE $(000) AGE (yrs) | One family 70 | ☒ Not likely ☐ Likely |
| Growth rate ☐ Rapid ☒ Stable ☐ Slow | ☒ Owner | Low 10 30 | 2-4 family 10 | ☐ In process |
| Property values ☒ Increasing ☐ Stable ☐ Declining | ☐ Tenant | High 650 100 | Multi-family 10 | |
| Demand/supply ☐ Shortage ☒ In balance ☐ Over supply | ☒ Vacant (0-5%) | Predominant | Commercial 5 | |
| Marketing time ☒ Under 3 mos. ☐ 3-6 mos. ☐ over 6 mos. | ☐ Vacant (over 5%) | 120 70 | Vacant 5 | |

**NEIGHBORHOOD**

Note: race and the racial composition of the neighborhood are not appraisal factors.

Neighborhood boundaries and characteristics Neighborhood boundaries are: NORTH Broadway; SOUTH Eastern Parkway/Winkler Ave.;
EAST I-65; WEST 7th Street. Established residential neighborhood.

Factors that affect the marketability of the properties in the neighborhood (proximity to employment and amenities, employment stability, appeal to market, etc.)
The subject is located in central Jefferson County, the Old Louisville neighborhood, approximately 3 mile from Louisville's central
business district. Shopping, schools and other value supporting amenities are located nearby and expressway access is convenient via I-65.
The neighborhood consists primarily of detached single family homes of average quality and appeal. Recent sales indicate a steady/rising
trend in both values and rents. Employment and the local economy are stable. No adverse factors were noted on the day of inspection.

Market conditions in the subject neighborhood (including support for the above conclusions related to the trend of property values, demand/supply, and marketing time
-- such as data on competitive properties for sale in the neighborhood, description of the prevalence of sales and financing concessions, etc.)
Housing supply and demand appear to be in balance. The area market remains stable with the average listing to sales price ratio remaining
steady at 95-97%. Average marketing time for well priced properties remains steady, averaging between 60-120 days. The appraiser has
considered relevant competitive listings and/or contract offerings in the performance of this appraisal and in the trending information
reported in this section. If a trend is indicated, the appraiser has attached an addendum providing relevant competitive listing/contract
offering data.

**PUD**

Project Information for PUDs (If applicable) -- is the developer/builder in control of the Home Owner's Association (HOA)? ☐ Yes ☐ No
Approximate total number of units in the subject project N/A     Approximate total number of units for sale in the subject project N/A
Describe common elements and recreational facilities N/A

**SITE**

| Dimensions 45 x 200 | | Topography Level/above street |
|---|---|---|
| Site area 9,000 SF/.21 Acre | Corner Lot ☐ Yes ☒ No | Size Typical |
| Specific zoning classification and description R-7 Multi-Family Residential District | | Shape Mostly Rectangular |
| Zoning compliance ☒ Legal ☐ Legal nonconforming (Grandfathered use) ☐ Illegal ☐ No Zoning | | Drainage Appears Adequate |
| Highest & best use as improved: ☒ Present use ☐ Other use (explain) | | View Average |

| Utilities | Public | Other | Off-site Improvements | Type | Public | Private | |
|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Street | Asphalt | ☒ | | Landscaping Average |
| Gas | ☒ | | Curb/gutter | Stone | ☒ | | Driveway Surface None |
| Water | ☒ | | Sidewalk | Concrete | ☒ | | Apparent easements Typical Utility |
| Sanitary sewer | ☒ | | Street lights | Incande/scent | ☒ | | FEMA Special Flood Hazard Area ☐ Yes ☒ No |
| Storm sewer | ☒ | | Alley | Yes | ☒ | | FEMA Zone X Map Date 02/02/94 |
| | | | | | | | FEMA Map No. 210 122 0070 D |

Comments (apparent adverse easements, encroachments, special assessments, slide areas, illegal or legal nonconforming zoning use, etc.) No adverse
easements, encroachments, or special assessments were noted the day of inspection. Lot dimensions obtained from PVA.

**DESCRIPTION OF IMPROVEMENTS**

| GENERAL DESCRIPTION | EXTERIOR DESCRIPTION | FOUNDATION | BASEMENT | INSULATION |
|---|---|---|---|---|
| No. of Units One | Foundation Stone | Slab None | Area Sq. Ft. 2,098 | Roof ☐ |
| No. of Stories Three | Exterior Walls Brick | Crawl Space Some | % Finished 90 | Ceiling ☐ |
| Type (Det./Att.) Detached | Roof Surface Comp/Shing. | Basement Yes | Ceiling Drywall | Walls ☐ |
| Design (Style) 2.5 Story | Gutters & Dwnspts. Alum/Both | Sump Pump Yes | Walls Various | Floor ☐ |
| Existing/Proposed Existing | Window Type Wd./Dh./Hng. | Dampness None Noted | Floor Various | None ☐ |
| Age (Yrs.) 100+ | Storm/Screens Some | Settlement Typical | Outside Entry None | Unknown/Concld. ☒ |
| Effective Age (Yrs.) 20-25 | Manufactured House No | Infestation Unknown | | Typical |

| ROOMS | Foyer | Living | Dining | Kitchen | Den | Family Rm. | Rec. Rm. | Bedrooms | # Baths | Laundry | Other | Area Sq. Ft. |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Basement | | | | | | Plus Storage/Workt Rm./Lavy Rm. | | | 1.0 | | Steam Rm. | 2,098 |
| Level 1 | 1 | 1 | 1 | 1 | | | | 2 | 1.0 | x | | 2,098 |
| Level 2 | | | | | | Office | | 2 | 2.0 | | Library | 2,087 |
| | | | | | | Media Rm. | | | 1.0 | | | 1,025 |
| | | | | | | Sun Rm./Game Rm. | | | | | | |

Finished area above grade contains 14 Rooms 5 Bedrooms 4.00 Bath(s) 4,210 Square Feet of Gross Living Area

| INTERIOR | Materials/Condition | HEATING | | KITCHEN EQUIP. | | ATTIC | | AMENITIES | | CAR STORAGE | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Floors | Hdw./Ceram./Mbl/Gd. | Type | 3 Fcd. Air | Refrigerator | ☒ | None | | Fireplace(s) # 3 ea. | ☒ | None | ☐ |
| Walls | Plaster/Drywl/Good | Fuel | Gas | Range/Oven | ☒ | Stairs | | Patio Rear | ☒ | Garage 1 # of cars |
| Trim/Finish | Wood/Good | Condition Avg/Avg. | | Disposal | ☒ | Drop Stair | | Deck Multiple | ☒ | Attached ☐ |
| Bath Floor | Ceramic/Mbl/Good | COOLING | | Dishwasher | ☒ | Scuttle | ☒ | Porch Multiple | ☒ | Detached 1 Car |
| Bath Wainscot | Ceramic/Mbl/Good | Central | Yes/5 | Fan/Hood | ☒ | Floor | | Fence Wood | ☒ | Built-in ☐ |
| Doors | Solid Panel/Good | Other | None | Microwave | ☒ | Heated | | Pool None | | Carport ☐ |
| | | Condition Avg/Avg. | | Washer/Dryer | ☒ | Finished | | | | Driveway Adequate |

Additional features (special energy efficient items, etc.) The subject is a large 2.5 story dwelling in the historic district of Old Louisville. See
attached addendum for "additional features" details.

**COMMENTS**

Condition of the improvements depreciation (physical, functional, and external) repairs needed, quality of construction, remodeling/additions, etc.
The floor plan is typical of this age/type dwelling. No functional obsolescence exists. Physical depreciation reflects typical wear and tear and is
calculated by use of the age/life method, but has little validity in older dwellings, due to accrued depreciation. No external obsolescence
exists and none is forecast. The intended use of this appraisal is for the purpose of obtaining a mortgage, as requested by the lender.
Adverse environmental conditions (such as, but not limited to, hazardous wastes, toxic substances, etc.) present in the improvements, on the site, or in the
immediate vicinity of the subject property. There are no known or apparent adverse environmental conditions that would negatively impact the
value of the property.

Freddie Mac Form 70 6-93     Page 1 of 2     Fannie Mae Form 1004 (6-93)

Leslie R. Bright

# UNIFORM RESIDENTIAL APPRAISAL REPORT    File No. _____

**Valuation Section**

| COST APPROACH | | |
|---|---|---|
| ESTIMATED SITE VALUE | = $ | 10,000 |
| ESTIMATED REPRODUCTION COST-NEW-OF IMPROVEMENTS | | |
| Dwelling 5,210 Sq. Ft. @ $ 70.00 = $ 364,700 | | |
| Bsmt 2,098 Sq. Ft. @ $ 12.00 = $ 25,176 | | |
| Fls/drns/gar/basmt/imp/decks/porches | = $ 150,000 | |
| Garage/Carport 800 Sq. Ft. @ $ 22.00 = $ 19,800 | | |
| Total Estimated Cost New | = $ 559,676 | |
| Less Physical 30 Functional 0 External 0 | | |
| Depreciation 167,903 | = $ 167,903 | |
| Depreciated Value of Improvements | = $ 391,773 | |
| "As is" Value of Site Improvements | = $ 10,000 | |
| INDICATED VALUE BY COST APPROACH | = $ 411,773 Est Rem Econ Life 40 yrs | |

Comments on Cost Approach (such as, source of cost estimate, site value, square foot calculation and for HUD, VA and FmHA, the estimated remaining economic life of the property) See attached sketch addendum for building measurements and living area calculations. Reproduction Cost New is derived from Marshall and Swift Cost Manual, supplemented with local builders' costs when available

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Address | 1120 S. 4th Street Louisville, KY | 1022 S. 3rd Street Louisville, KY | 1115 S. 4th Street Louisville, KY | 1332 S. 4th Street Louisville, KY |
| Proximity to Subject | | 3 mile N | cross street | 1 block N |
| Sales Price | $ Market value | $ 197,500 | $ 130,000 | $ 500,000 |
| Price/Gross Liv. Area | $ 0.00 | $ 87.99 | $ 75.44 | $ 68.41 |
| Data and/or | Inspection | PVA/MLS | PVA/MLS | MLS/PVA/Agent |
| Verification Source | PVA/Owner | Observation | Observation | Inspection/Appraiser's Files |

| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
|---|---|---|---|---|---|---|---|
| Sales or Financing | | Conventional | | Conventional | | Conventional | |
| Concessions | | None discl. | | None discl. | | None Disclosed | |
| Date of Sale/Time | | 2003 Closed | | 2002 Closed | | 2003 Closed | |
| Location | Urban | Urban | | Urban | | Urban | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 9,000 SF/.21 Acre | .23 Ac. | 0 | .20 Ac. | 0 | .27 Ac. | 0 |
| View | Residential | Residential | | Residential | | Central Park | -5,000 |
| Design and Appeal | 2.5 Story | 2.5 Story | | 2.5 Story | | 2.5 Story | |
| Quality of Construction | Brick/Good | Brick/Good | | Brick/Good | | Brick/Good | |
| Age | 100+ years | 100+ years | | 100+ years | | 100+ years | |
| Condition | Renovated/Good | Renovated/Good | | Renovated/Good | | Renovated/Good | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 11 5 3.00 | 16 6 7.00 | -9,000 | 12 5 1.50 | -1,500 | 14 6 7.00 | -9,000 |
| Gross Living Area | 5,210 Sq. Ft. | 5,654 Sq. Ft. | -8,900 | 5,700 Sq. Ft. | -10,000 | 7,309 Sq. Ft. | -12,000 |
| Basement & Finished | Basement | Basement | | Basement | | Basement | |
| Rooms Below Grade | Fin w/bth & stm rm | Fin/4 rooms | 0 | Unfinished | +30,000 | Fin/1 room | +25,000 |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | GFA/CAC | GFA/CAC | | GFA/CAC | | GFA/CAC | |
| Energy Efficient Items | Typical | Typical | | Typical | | Typical | |
| Garage/Carport | 1 Car Det. Garage | 3 C Gar./Anealby | -10,000 | 1 Car Det. Garage | | 2267SF Cinge Hse | -50,000 |
| Porch, Patio, Deck, | Pchs/Decks/Ptios | Similar | | Similar | | Similar | |
| Fireplace(s), etc. | 3 working FPs | 3 wrking FPs | -2,000 | 8 wrking FPs | -6,000 | 7 working FPs | -8,000 |
| Fence, Pool etc. | Wood Fence | Similar | | Similar | | Similar | |
| | Modern Kitchen | Modern Kitchen | | Modern Kitchen | | Modern Kitchen | |
| Net Adj. (total) | | + X - $ 29,900 | | X + - $ 12,500 | | + X - $ 89,000 | |
| Adjusted Sales Price | | | | | | | |
| of Comparable | | $ 167,600 | | $ 132,500 | | $ 411,000 | |

Comments on Sales Comparison (including the subject property's compatibility to the neighborhood, etc.) All comps are sales of 100+ year old brick 2.5 story historic brick dwellings in the immediate Old Louisville neighborhood. All have undergone high quality renovations. Adjustments were made to GLA and for amenity differential as indicated. Comp 3 exceeds FNMA adjustment guidelines but is still considered an excellent indicator of value due to location 1 block north of the subject and similarity of style, age, and condition. All comps were considered in the final estimate of value.

| ITEM | SUBJECT | COMPARABLE NO. 1 | COMPARABLE NO. 2 | COMPARABLE NO. 3 |
|---|---|---|---|---|
| Date, Price and Data | 4-1-02 | None | None | None |
| Source, for prior sales | name transfer | | | |
| within year of appraisal | from PVA | PVA | PVA | PVA |

Analysis of any current agreement of sale, option, or listing of the subject property and analysis of any prior sales of subject and comparables within one year of the date of appraisal There is no current contract on the subject property. No sales of comps within 1 year. ***I's of a digital signature is the policy of this office for electronic transmission of appraisals. signature is appraiser's original.

| INDICATED VALUE BY SALES COMPARISON APPROACH | $ | 440,000 |
|---|---|---|
| INDICATED VALUE BY INCOME APPROACH (If Applicable) Estimated Market Rent $ n/a /Mo. x Gross Rent Multiplier n/a = $ | 0 | |

This appraisal is made [X] "as is" ☐ subject to the repairs, alterations, inspections or conditions listed below ☐ subject to completion per plans and specifications

Conditions of Appraisal: This is a complete summary appraisal as defined by USPAP. All mechanicals and structures are presumed, but not warranted, to be in working order. No conditions of the appraisal.

Final Reconciliation: The direct sales comparison approach best simulates the market and is given the most weight. The cost approach supports the direct sales comparison approach but has little validity in older properties due to accrued depreciation. Income approach is considered n/a as the subject is owner occupied.

The purpose of this appraisal is to estimate the market value of the real property which is subject to this report, based on the above conditions and the certification, contingent and limiting conditions, and market value definition that are stated in the attached Freddie Mac Form 439/Fannie Mae Form 1004B (Revised 10/94 )

I (WE) ESTIMATE THE MARKET VALUE, AS DEFINED, OF THE REAL PROPERTY THAT IS THE SUBJECT OF THIS REPORT, AS OF May 3, 2003 (WHICH IS THE DATE OF INSPECTION AND THE EFFECTIVE DATE OF THIS REPORT) TO BE $ 440,000

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature ☐ Did ☐ Did Not |
| Name Leslie R. Bright | Name Inspect Property |
| Date Report Signed May 3, 2003 | Date Report Signed |
| State Certification # 000207 State KY | State Certification # State |
| Or State License # State | Or State License # State |

Fannie Mae Form 1004 (6-93)

COMMENT ADDENDUM

File No. 030323

Borrower: Keith Hunter

Property Address: 1420 S. 4th Street

City: Louisville    County: Jefferson    State: KY    Zip Code: 40208

Lender/Client: Citizens Union Bank    Address: 1854 Midland Trail, Shelbyville, KY 40014

COMMENT ADDENDUM:

The subject property is a 2.5 story brick dwelling one block south of Central Park in Old Louisville, listed in the historic register. The property was formerly a triplex, but has been totally renovated and returned to single family use.

The subject is in very good condition, and all mechanicals, plumbing, electrical and heating/cooling systems are recent. There are 5 forced air furnaces, 5 central air units providing "zoned" heating/cooling. The exterior has been well maintained and updated and includes wood fences, extensive landscaping, a 4 car 20x45' detached garage, extensive rear decking, brick walkways and patios, and the exterior has been restored to historical accuracy.

Interior details include restored original trim, other original architectural details such as large, open staircase, another spiral staircase, raised panelling and wainscotting, hardwood floors throughout (some restored, some new), pocket doors, 15' ceilings, original trim and mouldings, new and original stained glass windows, some wood/vaulted ceilings. Bathrooms have all been updated and include glass block, ceramic tile, marble, whirlpool tubs, walk-in ceramic showers, a steam room, high end fixtures and finishes. Paint is recent throughout.

The first floor includes a large foyer, living room, dining room, gourmet kitchen with center island, ample cabinetry, laundry off kitchen, full bath, two bedrooms.

The second floor includes the master bedroom w/master bath, second bedroom with bath, an office, a library and a large bar area with extensive built-ins.

Third floor includes a pool room, sunroom, bedroom and full bath, as well as a sitting area.

The basement includes a weight room and an exercise room, both with mirrored walls and rubber flooring, a photo studio and a full bath with extra large ceramic tiled shower/steam room with multiple shower heads.

All finishes throughout are high end and professionally completed.

# SKETCH/AREA TABLE ADDENDUM



**SUBJECT PHOTO ADDENDUM**

File No. _____

Borrower: Keith Hunter
Property Address: 1128 S. 4th Street
City: Louisville    County: Jefferson    State: KY    Zip Code: 40208
Lender/Client: Citizens Union Bank    Address: 1854 Midland Trail, Shelbyville, KY 40065



**FRONT OF
SUBJECT PROPERTY**

Address
1128 S. 4th Street
Louisville, KY



**REAR OF
SUBJECT PROPERTY**



**STREET SCENE**

COMPARABLES 1-2-3 PHOTO ADDENDUM

Borrower    Keith Hunter
Property Address    1420 S 4th Street
City    Louisville    County    Jefferson    State    KY    Zip Code    40208
Lender/Client    Citizens Union Bank    Address    1854 Midland Trail, Shelbyville, KY 40065



**COMPARABLE SALE #1**

Address
1025 S 2nd Street
Louisville, KY



**COMPARABLE SALE #2**

Address
1411 S 4th Street
Louisville, KY



**COMPARABLE SALE #3**

Address
1202 S 4th Street
Louisville, KY

DEFINITION OF MARKET VALUE: The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he considers his own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

## STATEMENT OF LIMITING CONDITIONS AND APPRAISER'S CERTIFICATION

CONTINGENT AND LIMITING CONDITIONS: The appraiser's certification that appears in the appraisal report is subject to the following conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it. The appraiser assumes that the title is good and marketable and, therefore, will not render any opinions about the title. The property is appraised on the basis of it being under responsible ownership.

2. The appraiser has provided a sketch in the appraisal report to show approximate dimensions of the improvements and the sketch is included only to assist the reader of the report in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in the appraisal report whether the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand.

5. The appraiser has estimated the value of the land in the cost approach at its highest and best use and the improvements at their contributory value. These separate valuations of the land and improvements must not be used in conjunction with any other appraisal and are invalid if they are so used.

6. The appraiser has noted in the appraisal report any adverse conditions (such as, needed repairs, depreciation, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the normal research involved in performing the appraisal. Unless otherwise stated in the appraisal report, the appraiser has no knowledge of any hidden or unapparent conditions of the property or adverse environmental conditions (including the presence of hazardous wastes, toxic substances, etc.) that would make the property more or less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied, regarding the condition of the property. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, the appraisal report must not be considered as an environmental assessment of the property.

7. The appraiser obtained the information, estimates, and opinions that were expressed in the appraisal report from sources that he or she considers to be reliable and believes them to be true and correct. The appraiser does not assume responsibility for the accuracy of such items that were furnished by other parties.

8. The appraiser will not disclose the contents of the appraisal report except as provided for in the Uniform Standards of Professional Appraisal Practice.

9. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that completion of the improvements will be performed in a workmanlike manner.

10. The appraiser must provide his or her prior written consent before the lender/client specified in the appraisal report can distribute the appraisal report (including conclusions about the property value, the appraiser's identity and professional designations, and references to any professional appraisal organizations or the firm with which the appraiser is associated) to anyone other than the borrower; the mortgagee or its successors and assigns; the mortgage insurer; consultants; professional appraisal organizations; any state or federally approved financial institution; or any department, agency, or instrumentality of the United States or any state or the District of Columbia; except that the lender/client may distribute the property description section of the report only to data collection or reporting service(s) without having to obtain the appraiser's prior written consent. The appraiser's written consent and approval must also be obtained before the appraisal can be conveyed by anyone to the public through advertising, public relations, news, sales, or other media.

**APPRAISER'S CERTIFICATION:**      The Appraiser certifies and agrees that:

1.  I have researched the subject market area and have selected a minimum of three recent sales of properties most similar and proximate to the subject property for consideration in the sales comparison analysis and have made a dollar adjustment when appropriate to reflect the market reaction to those items of significant variation. If a significant item in a comparable property is superior to, or more favorable than, the subject property, I have made a negative adjustment to reduce the adjusted sales price of the comparable and, if a significant item in a comparable property is inferior to, or less favorable than the subject property, I have made a positive adjustment to increase the adjusted sales price of the comparable.

2.  I have taken into consideration the factors that have an impact on value in my development of the estimate of market value in the appraisal report. I have not knowingly withheld any significant information from the appraisal report and I believe, to the best of my knowledge, that all statements and information in the appraisal report are true and correct.

3.  I stated in the appraisal report only my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the contingent and limiting conditions specified in this form.

4.  I have no present or prospective interest in the property that is the subject to this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or the estimate of market value in the appraisal report on the race, color, religion, sex, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property.

5.  I have no present or contemplated future interest in the subject property, and neither my current or future employment nor my compensation for performing this appraisal is contingent on the appraised value of the property.

6.  I was not required to report a predetermined value or direction in value that favors the cause of the client or any related party, the amount of the value estimate, the attainment of a specific result, or the occurrence of a subsequent event in order to receive my compensation and/or employment for performing the appraisal. I did not base the appraisal report on a requested minimum valuation, a specific valuation, or the need to approve a specific mortgage loan.

7.  I performed this appraisal in conformity with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place as of the effective date of this appraisal, with the exception of the departure provision of those Standards, which does not apply. I acknowledge that an estimate of a reasonable time for exposure in the open market is a condition in the definition of market value and the estimate I developed is consistent with the marketing time noted in the neighborhood section of this report, unless I have otherwise stated in the reconciliation section.

8.  I have personally inspected the interior and exterior areas of the subject property and the exterior of all properties listed as comparables in the appraisal report. I further certify that I have noted any apparent or known adverse conditions in the subject improvements, on the subject site, or on any site within the immediate vicinity of the subject property of which I am aware and have made adjustments for these adverse conditions in my analysis of the property value to the extent that I had market evidence to support them. I have also commented about the effect of the adverse conditions on the marketability of the subject property.

9.  I personally prepared all conclusions and opinions about the real estate that were set forth in the appraisal report. If I relied on significant professional assistance from any individual or individuals in the performance of the appraisal or the preparation of the appraisal report, I have named such individual(s) and disclosed the specific tasks performed by them in the reconciliation section of this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in the report; therefore, if an unauthorized change is made to the appraisal report, I will take no responsibility for it.

**SUPERVISORY APPRAISER'S CERTIFICATION:**      If a supervisory appraiser signed the appraisal report, he or she certifies and agrees that: I directly supervise the appraiser who prepared the appraisal report, have reviewed the appraisal report, agree with the statements and conclusions of the appraiser, agree to be bound by the appraiser's certifications numbered 4 through 7 above, and am taking full responsibility for the appraisal and the appraisal report.

ADDRESS OF PROPERTY APPRAISED:      1420 S. 4th Street, Louisville, KY 40208

| APPRAISER: | SUPERVISORY APPRAISER      (only if required) |
|---|---|
| Signature: _____ | Signature: _____ |
| Name: _____ Leslie R. Bright | Name: _____ |
| Date Signed: _____ May 3, 2003 | Date Signed: _____ |
| State Certification #: _____ 000207 | State Certification #: _____ |
| or State License #: _____ | or State License #: _____ |
| State: _____ KY | State: _____ |
| Expiration Date of Certification or License: _____ 06/30/03 | Expiration Date of Certification or License _____ |
| | ☐ Did   ☐ Did Not Inspect Property |

# SKETCH/AREA TABLE ADDENDUM



| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Size | Net Totals |
| GLA1 | First Floor | 2097.49 | 2097.49 |
| GLA2 | Second Floor | 2087.09 | 2087.09 |
| GLA3 | Third Floor | 1024.98 | 1024.98 |

| TOTAL LIVABLE | (rounded) | | 5210 |

| LIVING AREA BREAKDOWN | | |
|---|---|---|
| Breakdown | | Subtotals |
| First Floor | | |
| | 3.5 × 10.0 | 35.00 |
| 0.5 × | 3.5 × 3.5 | 6.13 |
| 0.5 × | 3.5 × 3.5 | 6.13 |
| | 29.1 × 57.9 | 1684.89 |
| | 5.2 × 29.5 | 153.40 |
| | 2.5 × 17.0 | 42.50 |
| | 1.5 × 11.1 | 16.65 |
| | 1.0 × 17.3 | 17.30 |
| | 4.0 × 9.3 | 37.20 |
| 0.5 × | 4.0 × 4.0 | 8.00 |
| 0.5 × | 4.0 × 4.0 | 8.00 |
| | 1.0 × 21.5 | 21.50 |
| | 1.0 × 7.6 | 7.60 |
| | 4.0 × 9.3 | 37.20 |
| 0.5 × | 4.0 × 4.0 | 8.00 |
| 0.5 × | 4.0 × 4.0 | 8.00 |
| Second Floor | | |
| | 29.1 × 29.5 | 858.45 |
| 0.5 × | 4.0 × 5.2 | 10.40 |
| | 5.2 × 25.5 | 132.60 |
| | 28.4 × 29.1 | 826.44 |
| | 1.5 × 11.1 | 16.65 |
| 18 unlisted calculations | | 1267.53 |

| 39 Calculations Total (rounded) | | 5210 |

Scale:    1 = 20

## APPRAISAL OF REAL PROPERTY

**LOCATED AT:**
1420 S 4th St
45 x 200 W S 4th Street Deed Book 8165 Page 352
Louisville, KY 40208-2119

**FOR:**
Michael R Gosnell

**AS OF:**
April 14, 2009

**BY:**
Joe Peery
Joe Peery Group Appraisers, Inc.
130 Fairfax Ave. #1C
Louisville, KY 40207

3

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

**SUBJECT**

| | |
|---|---|
| Property Address 1420 S 4th St | City Louisville | State KY | Zip Code 40208 |
| Borrower N/A | Owner of Public Record Keith B. Hunter | County Jefferson |
| Legal Description 45 x 200 W S 4th Street Deed Book 8165 Page 352 | | |
| Assessor's Parcel # 033-0030000 | Tax Year 2008 | R.E. Taxes $ X504 |
| Neighborhood Name Old Louisville | Map Reference Area 1 | Census Tract 0065.00 |
| Occupant Owner Tenant Vacant | Special Assessments $ 0.00 | PUD HOA $ N/A |
| Property Rights Appraised Fee Simple Leasehold Other (describe) | | |
| Assignment Type Purchase Transaction Refinance Transaction Other (describe) To estimate the subject's fair market value as of April 14, 2009 | | |
| Lender/Client Michael R. Gosnell Address 471 West Main Street, Suite 400, Louisville, KY | | |
| Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? Yes No | | |
| Report data source(s) used, offering price(s), and date(s). MLS | | |

**CONTRACT**

I did did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed. Subject is not under contract.

| | |
|---|---|
| Contract Price $ Mkt Value Date of Contract NA | Is the property seller the owner of public record? Yes No Data Source(s) PVA |
| Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? Yes No | |
| If Yes report the total dollar amount and describe the items to be paid None NA | |

**NEIGHBORHOOD**

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location Urban Suburban Rural | Property Values Increasing Stable Declining | PRICE AGE | One-Unit 90 % |
| Built-Up Over 75% 25-75% Under 25% | Demand/Supply Shortage In Balance Over Supply | $ (000) (yrs) | 2-4 Unit 3 % |
| Growth Rapid Stable Slow | Marketing Time Under 3 mths 3-6 mths Over 6 mths | 100 Low 5 | Multi-Family 2 % |
| Neighborhood Boundaries North-Broadway, East-Floyd Street, West-7th Street; South-Lee Street The | 900 High 120 | Commercial 10 % |
| neighborhood is dominated by single family residential use. | 500 Pred 100 | Other 5 % |

Neighborhood Description Located in the City of Louisville approximately 2 miles south of the central business district. Area offers reasonable access to suburban urban employment centers, university and parks. Area is known as "Old Louisville" a high demand area offering a mix of single-family and multi-family homes. No adverse neighborhood characteristics noted.

Market Conditions (including support for the above conclusions) Financing is predominantly conventional loans. Market activity is reasonable with competitively priced homes selling within 150 days. Area values are stable and supply and demand are in balance. No negative market influences are noted.

**SITE**

| | |
|---|---|
| Dimensions 45 x 200 | Area 0.21 Acres | Shape Rectangular | View Residential |
| Specific Zoning Classification TN | Zoning Description Traditional Neighborhood/Single Family Residential | | |
| Zoning Compliance Legal Legal Nonconforming (Grandfathered Use) No Zoning Illegal (describe) | | | |
| Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use? Yes No If No describe | | | |

| Utilities | Public | Other (describe) | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|
| Electricity | | | Water | | Street Asphalt | | |
| Gas | | | Sanitary Sewer | | Alley None | | |

| | |
|---|---|
| FEMA Special Flood Hazard Area Yes No FEMA Flood Zone X | FEMA Map # 21111C0041E | FEMA Map Date 12-5-2006 |
| Are the utilities and off-site improvements typical for the market area? Yes No If No, describe | | |

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? Yes No If Yes describe The site is on grade and connected to all utilities. No encroachments noted and easements appear to be typical. Measurements from PVA. No survey provided. No adverse site characteristics noted. The site is improved with a large brick patio, privacy fence, good quality landscaping and walks.

**IMPROVEMENTS**

| General Description | Foundation | Exterior Description | materials/condition | Interior | materials/condition |
|---|---|---|---|---|---|
| Units One One with Accessory Unit | Concrete Slab Crawl Space | Foundation Walls Stone/Brick/Good | | Floors Hdwd/Ceram/Good | |
| # of Stories 2.5 | Full Basement Partial Basement | Exterior Walls Brick/Good | | Walls Plaster-Drywall/Good | |
| Type Det Att S-Det/End Unit | Basement Area 2,043 sq.ft. | Roof Surface Asph Shingle/Good | | Trim/Finish Wood/ Good | |
| Existing Proposed Under Const | Basement Finish 100 % | Gutters & Downspouts Auminum/Good | | Bath Floor Cerm/Tile/Tile/Good | |
| Design (Style) 2.5 Story/Good | Outside Entry/Exit Sump Pump | Window Type Wood Dbl Hg/Good | | Bath Wainscot Cerm/Tile/Good | |
| Year Built 1890 | Evidence of Infestation None | Storm Sash/Insulated None/Typical | | Car Storage None | |
| Effective Age (Yrs) 20 | Dampness Settlement | Screens N/A | | Driveway # of Cars Street/Any | |
| Attic None | Heating FWA HWBB Radiant | Amenities | Woodstove(s) # 0 | Driveway Surface N/A | |
| Drop Stair Stairs | Other Fuel Gas | Fireplace(s) # 3 Fence Privacy | | Garage # of Cars 2+ | |
| Floor Scuttle | Cooling Central Air Conditioning | Patio/Deck Both Porch Covd Frnt | | Carport # of Cars | |
| Finished Heated | Individual Other | Pool 0 Other 0 | | Att Det Built-In | |

| Appliances Refrigerator Range/Oven Dishwasher Disposal Microwave Washer/Dryer | Other (describe) |
|---|---|
| Finished area above grade contains 14 Rooms 5 Bedrooms 4 Bath(s) | 5,411 Square Feet of Gross Living Area Above Grade |

Additional features (special energy efficient items etc.) Completely remodeled throughout, to include new kitchen and baths, new decor (modern with glass block walls, art niches, stained glass), fluted jambs, recessed lights, full finished basement with wet bar and steam shower, 5-HVACs.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.) The subject is a completely updated and restored 119 year old brick 2.5 story style in very good condition. The quality is very good throughout, with an abundance of custom built decor and finish. The floor plan is functional and typical of this style found throughout the Old Louisville neighborhood. The subject is typical of large older homes that have kept the older style, but updated with the latest in modern amenities (new custom kitchen/baths/modern/computer friendly). The large size, very good quality and condition and high demand 1400 block of south 4th Street results in good market appeal.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? Yes No If Yes describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? Yes No If No, describe Note: the basement is fully finished with exercise rooms, photo studio, wet bar and full bathroom with a large steam shower. However, relative little value is given to this finished area due to the fact that finished basements are rare and an abundance of space exits on the other levels.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

| | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
|---|---|---|---|---|
| There are | 3 | comparable properties currently offered for sale in the subject neighborhood ranging in price from $ to $ 489,000 | | to $ 275,000 |
| There are | 3 | comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 440,000 | | to $ 805,000 |
| FEATURE | SUBJECT | COMPARABLE SALE # 1 | COMPARABLE SALE # 2 | COMPARABLE SALE # 3 |
| Address | 1420 S 4th St | 1381 S 4th Street | 1440 Saint James Court | 1327 S. 3rd Street |
| | Louisville, KY 40208-2119 | Louisville, KY 40208 | Louisville, KY 40208 | Louisville, KY 40208 |
| Proximity to Subject | | 0.09 miles N | 0.12 miles SW | 1.25 miles NE |
| Sale Price | $ Mkt Value | $ 825,000 | $ 440,000 | $ 104 71 sq ft |
| Sale Price Gross Liv. Area | $ sq ft | $ 120.97 sq ft | $ 82.88 sq ft | $ 104 71 sq ft |
| Data Source(s) | | MLS #1166775 | MLS #1221891 | MLS #1189562 |
| Verification Source(s) | | PVA | PVA | PVA |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment | DESCRIPTION +(-) $ Adjustment |
| Sales or Financing | | Conventional | Conventional | Conventional |
| Concessions | | No Concess | No Concess | No Concess |
| Date of Sale/Time | | 5/01/08 | 1/20/09 | 4/28/08 |
| Location | Urban/Good | Urban/Good | Urban/Good | Urban/Good |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| Site | 0.21 Acres | 0.22 Acres | 0.21 Acres | 0.18 Acres |
| View | Residential | Residential | Residential | Residential |
| Design (Style) | 2.5 Story/Good | 2.5 Story/Good | 2.5Str/Aparts/Inf | 22 000 2.5 Story/Good |
| Quality of Construction | Brick/Good | Brick/Good | Brick/Good | Brick/Good |
| Actual Age | 119 | 110 | 116 | 109 |
| Condition | Very Good | Excellent | -200,000 Average | -100 000 Very Good |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | Total Bdrms. Baths | Total Bdrms. Baths |
| Room Count | 14 5 | 12 6 4.5 | -1,000 12 6 6 | -7,500 10 6 4.5 |
| Gross Living Area | 5,411 sq ft | 6,820 sq ft | -70,450 5,309 sq ft | +5,100 5,310 sq ft | +5 100 |
| Basement & Finished | Basement | No Basement | -10,000 Basement | Basement |
| Rooms Below Grade | Extensive Finish N/A | | +7,500 Unfinished | +7,500 Unfinished | +7 500 |
| Functional Utility | Average | Average | Average | Average |
| Heating/Cooling | FA/CAC | FA/CAC | FA/CAC | FA/CAC |
| Energy Efficient Items | Average | Average | Average | Average |
| Garage/Carport | 2-Det Garage | 2 Det Garage | None | +7,500 3 Det Garage |
| Porch/Patio/Deck | Decks/Fnd/Patio | Similar | Similar | Similar |
| Fireplaces | 3-Fireplaces | Similar | Similar | Similar |
| Net Adjustment (Total) | | + $ -253,950 | + $ 134,600 | + - $ 11 600 |
| Adjusted Sale Price | | Net Adj 30.8 % | Net Adj 30.6 % | Net Adj 2 1 % |
| of Comparables | | Gross Adj 35.0 % $ 571 050 | Gross Adj 34.0 % $ 574 600 | Gross Adj 2.4 % $ 96 600 |

I did did not research the sale or transfer history of the subject property and comparable sales. If not, explain

PVA MLS

My research did did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) PVA/MLS
My research did did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) PVA MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | No prior 36 months sales | No sales in prior 12 mos | No sales in prior 12 mos | No sales in prior 12 mos |
| Price of Prior Sale/Transfer | N/A | | | |
| Data Source(s) | PVA | MLS | MLS | MLS |
| Effective Date of Data Source(s) | 6/2009 | 6/2009 | 6/2009 | 6/2009 |

Analysis of prior sale or transfer history of the subject property and comparable sales   N/A

Summary of Sales Comparison Approach   All sales are located in the subject's "Old Louisville" neighborhood and are similar enough to appeal to the same potential buyers. In this market prices vary widely relative to the extent and quality of renovation. Sale #1 is located in the same block as the subject. It is larger and, most significantly, has a greater degree of restoration relative to the subject. The large condition adjustment for sale #1 is based on paired sales analysis with sale #3 (that is almost identical with the subject in size and condition). This was further supported by the agent. Sale #1 shows the subject's value relative to the upper end of the price range for this market. Sale #2 is also located nearby. It has not been updated like the subject and, more importantly, was made into 4 separate apartments. This significantly lowers the highest and best use of homes in this market (again, this is based on an analysis of the comparison of similar size/age single family homes in this area with ones that have been converted to apartments). ......see top next page to continue..............
Indicated Value by Sales Comparison Approach $ 570,000

Indicated Value by: Sales Comparison Approach $ 570,000   Cost Approach (if developed) $ N/A   Income Approach (if developed) $ N/A
Sales comparison approach approach is emphasized in this report because it best reflects actual buyer behavior. Cost approach is not applicable here because of the age of the home. The income approach is not applicable because homes like the subject are not typically purchased for income production.
This appraisal is made "as is", subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair. Note: This appraisal is subject to the fair market value of the subject as of April 14, 2009.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 570,000 , as of See above, which is the date of inspection and the effective date of this appraisal.

TO BE COMPLETED BY PARTY OF THE SECOND PART/ GRANTEE
PRIOR TO RECORDING:

For purposes of KRS 382.135, Property
Tax Bills should be forwarded to the
Party of the Second Part/ Grantee at
the following in-care-of (c/o) address:

_____
(insert c/o name if different from Grantee)

_____
(insert c/o address)

_____
(insert city, state, zipcode)

# C O M M I S S I O N E R ' S D E E D

THIS DEED made this the 10th day of September, 2009, between CITIZENS UNION BANK; KEITH B. HUNTER; COMMONWEALTH OF KENTUCKY, DEPARTMENT OF REVENUE; LOUISVILLE/JEFFERSON COUNTY METRO GOVERNMENT; UNKNOWN DEFENDANT, BEING THE UNKNOWN SPOUSE OF KEITH B. HUNTER, IF ANY, Parties of the First Part, all by DANIEL T. ALBERS, SR., COMMISSIONER of the Jefferson Circuit Court, Fourth Floor, Old Jail Building, 514 West Liberty Street, Louisville, Kentucky, 40202, and

CITIZENS UNION BANK, A KENTUCKY BANKING CORPORATION, P.O. BOX 189, SHELBYVILLE, KENTUCKY 40066, Party of the Second Part.

W I T N E S S E T H:

THAT WHEREAS on the 23rd day of October, 2007, an action was instituted in the Jefferson Circuit Court, Division 2, No. 07CI10539 styled CITIZENS UNION BANK, Plaintiff, vs. HUNTER, KEITH B., ET AL, Defendants, wherein, among other things, it was sought to sell the following described property situated in Jefferson County, Kentucky, and being more particularly described as follows:

> BEGINNING on the West side of Fourth Street, 316.46 feet South of the intersection of the West line of Fourth Street and Brooks line, running thence Southwardly with the West line of Fourth Street 45 feet, and extending back Westwardly of the same width throughout, and between lines at right angles to Fourth Street 200 feet to an alley.

> BEING the same property conveyed to Keith B. Hunter by deed dated June 12, 2003, and recorded in Deed Book 8165, Page 352, in the Office of the Clerk of the County Court of Jefferson County, Kentucky.

4

DB 0 9 4 6 4 PG 0 2 7 9

And such proceedings were had in such cause that a judgment was rendered ordering the sale of the above described property and under that Judgment the Commissioner of said Court reported a sale thereof as of the 14th day of April, 2009, to CITIZENS UNION BANK at the sum of $300,000.00.

Purchaser has complied with the terms of sale as shown by an Order in this action. Report of sale was confirmed by said Court, and the Commissioner was ordered to convey said property to said Second Party as hereinafter set out.

**NOW, THEREFORE, THIS DEED FURTHER WITNESSETH,** that the said Parties of the First Part, by said Commissioner, Daniel T. Albers, Sr. for and in consideration of the premises, and for the further consideration of said sum of $300,000.00, paid or credited by said Second Party as aforesaid, have granted, bargained, and sold, and by these presents do grant, bargain, sell, release, confirm and convey unto said Second Party the property hereinbefore more particularly described, together with the appurtenance thereon, in fee simple, free and clear of all liens, encumbrances and interest of the parties hereto, except sold subject to: A) All real estate taxes that become due after the sale ordered herein, for which the Purchaser shall not have a credit against the purchase price; B) Easements, restrictions, stipulations and agreements of record in the office of the Clerk of the County Court of Jefferson County, Kentucky; C) Assessments for public improvements levied against the property; D) Any facts which an inspection and accurate survey of the premises may disclose; and, E) **This conveyance is subject to a lien in favor of the Defendant, Keith B. Hunter, in accordance with the August 28, 2009 Order of Court stating that the said Defendant has the right to redeem the subject real property during the statutory period provided for in KRS 426.530(1).**

**IN TESTIMONY WHEREOF,** the said Commissioner has hereunto set his name the day and year first within written.

EXAMINED AND APPROVED this
25th day of  Sept   2009

_____
J U D G E

DANIEL T. ALBERS, SR.
COMMISSIONER
of the Jefferson Circuit Court

_____

2

DH 09464 PG 0280

COMMONWEALTH OF KENTUCKY    )
                                                             )
JEFFERSON CIRCUIT COURT          )

On the 25th day of Sept, 2009, came the Commissioner and produced in Court the within and foregoing Deed to CITIZENS UNION BANK, A KENTUCKY BANKING CORPORATION, P.O. BOX 189, SHELBYVILLE, KENTUCKY 40066, and executed and acknowledged the same as Commissioner for and on behalf of the grantors therein named to be their act and deed.

And said Deed, being examined and approved by the Judge, is ordered to be certified to by the Clerk of this Court to the Clerk of the Jefferson County Court for record, which is hereby done.

I certify that this deed was
prepared by the Commissioner
of the Jefferson Circuit
Court, Old Jail Building,
Louisville, Kentucky.

DANIEL T. ALBERS, SR.,
COMMISSIONER

ATTEST: DAVID L. NICHOLSON, CLERK
JEFFERSON CIRCUIT COURT

BY: _____, D.C.

ATTORNEY FOR PURCHASER
WEBER & ROSE, P.S.C.
Michael R. Gosnell
471 West Main St.
Suite 400
Louisville, KY 40202
(502) 589-2200

Document No.: DN2009148077
Lodged By: WEBER & ROSE
Recorded On:    10/02/2009        11:50:55
Total Fees:                  20.00
Transfer Tax:                  .00
County Clerk: BOBBIE HOLSCLAW-JEFF CO KY
Deputy Clerk: KELTAR

3

DB 0 9 4 6 4 PG 0 2 8 1

NO. 07CI10539                                          JEFFERSON CIRCUIT COURT
                                                                DIVISION 2

CITIZENS UNION BANK                                              PLAINTIFF

VS.          **CERTIFICATION OF CONSIDERATION FOR DEED**

HUNTER, KEITH B., ET AL                                          DEFENDANTS

                        * * * * * * * * * *

     The parties hereto, in person and/or by agent or counsel, state the consideration reflected
in attached deed is the full consideration paid for the property. The grantee(s) join in this deed for
the sole purpose of certifying the consideration pursuant to KRS 382.

### CONSIDERATION CERTIFICATE

     We, the undersigned, hereby certify that the consideration reflected in this deed is the full
consideration paid for the property.

COMMISSIONER, GRANTOR                    COUNSEL/AGENT FOR GRANTEE(S)
DANIEL T. ALBERS, SR.

STATE OF KENTUCKY          )
                           ) SS
COUNTY OF JEFFERSON        )

The foregoing Consideration Certificate was acknowledged and sworn to before me this 17th

day of _September_____, 2009, by Daniel T. Albers, Sr., Commissioner, grantor, and

**Michael R. Gosnell,** Counsel or Agent for grantee(s).

     My Commission expires: 4-7-2011

     Notary Public, State at Large, Kentucky

END OF DOCUMENT                          4

49481.016

NO. 00-CI-04922

JEFFERSON CIRCUIT COURT

DIVISION SIX

KIMBERLY G. HILL and ROBERT W. HILL

PLAINTIFFS

V

## OPINION AND ORDER

KENTUCKY LOTTERY CORPORATION

DEFENDANTS

\* \* \* \* \* \* \* \* \* \* \* \* \*

This matter comes before the Court on a motion brought by Plaintiffs, Kimberly G. Hill and Robert W. Hill, for an award of attorney fees pursuant to KRS 344.450 in the amount of $451,529.74.

## BACKGROUND SUMMARY

Kimberly G. Hill and her husband, Robert W. Hill, were both employed with the Kentucky Lottery Corporation ("Lottery"). Their employment was terminated on or about August 31, 1999. The Hills brought this action against the Lottery claiming retaliatory discharge under KRS Chapter 344 - the Kentucky Civil Rights Act ("KCRA"), wrongful discharge in violation of public policy, defamation, and punitive damages. The Hills alleged that their employment was terminated based upon Ms. Hill's refusal to falsely testify in an unemployment hearing involving Edward Gilmore, a former Lottery employee, and upon her testimony at the hearing that Gilmore's employment was terminated on November 11, 1998 because of eyesight problems. (Gilmore's October 28, 1999 discrimination suit against the Lottery was unsuccessful.) The Lottery alleged that the employment of the Hills was terminated based upon work-related misconduct, dishonesty, and violation of company policies and procedures.

A three-week jury trial was held beginning December 2, 2002. On December 18, 2002, the

jury returned a verdict finding in favor of the Hills on all their claims. The jury awarded Ms. Hill $113,866 for past wages; $84,000 for lost future wages; $500,000 for mental anguish caused by defamation; and $1,000,000 in punitive damages. The jury awarded Mr. Hill $154,450 for past wages; $500,000 for lost future wages; $1,000,000 for mental anguish caused by defamation; and $1,000,000 in punitive damages. The Court entered a judgment in favor of the Hills on January 21, 2003. (This judgment was subsequently vacated, and new judgments in conformity with the jury verdict were entered on May 12, 2003.)

On January 31, 2003, the Lottery filed a motion to alter, amend, or vacate the judgment, for a new trial, and/or judgment notwithstanding the verdict. On August 8, 2003, the Court entered an Opinion and Order dismissing the Hills' claim for wrongful discharge in violation of public policy; and ordering a limited retrial on the amount of damages for retaliatory discharge under KRS 344.280, and a full retrial on the claim of defamation and the claim for punitive damages. The Hills and the Lottery appealed, but said appeals were dismissed as interlocutory by the Court of Appeals on November 18, 2003.

From August 18, 2004 through August 26, 2004, the retrial was held in this matter. The jury returned a verdict in favor of Mrs. Hill in the amount of $120,000 for retaliatory discharge and in favor of Mr. Hill in the amount of $132,500 for retaliatory discharge. The jury found in favor of the Lottery on the Hills' claims of defamation and thus, no punitive damages were awarded.

On October 21, 2004, the Hills filed a motion for attorney fees pursuant to KRS 344.450 in the amount of $451,529.74. The Lottery filed a response to the motion on November 12, 2004. The Hills filed a reply on November 22, 2004.

## OPINION

As stated in Kentucky State Bank v. AG Services, Inc., Ky. App., 663 S.W.2d 754 (1984), the general rule is that attorney fees are not allowable as costs in absence of a statute or contract expressly providing for said fees. In this case, the Hills were successful on their retaliatory discharge claims under the KCRA. KRS 344.450 of the KCRA provides for the award of a reasonable fee for a successful plaintiff's attorney of record.

While the Lottery does not object to the Hills being awarded attorney fees under KRS 344.450, it objects to the reasonableness of the claimed $451,529.74 amount and to certain specific charges being included in said amount. The Hills agree that their request needs to be offset by $1,507.50 pursuant to the Court's November 14, 2002 order, but disagree with the Lottery's other arguments.

The acceptable method of calculating a reasonable attorney fee under KRS 344.450 was discussed in Meyers v. Chapman Printing Company, Inc., Ky., 840 S.W.2d 814 (1992). "[T]he court should not undertake to adopt some arbitrary proportionate relationship between the amount of attorney fees awarded and the amount of damages awarded." Id. at 825-26. Instead, an attorney fee should be calculated by multiplying counsel's reasonable hours with a reasonable hourly rate to produce a "lodestar" figure, which may then be adjusted due to special factors in a particular case, such as the results obtained by counsel. Id. at 826.

As pointed out by the Lottery, the Hills were seeking over 6.7 million in damages and were awarded only $252,500 (less than five percent of the total sought). The jury found against the Hills on their claims of defamation, for which they were seeking punitive damages. Even though the Hills' claims of defamation were somewhat interrelated with their KCRA retaliatory discharge

3

claims, the defamation claims had differing facts and were based on a separate legal theory Consequently, due to the Hills' limited success at trial, the Court finds that it would be reasonable to reduce the amount sought for attorney fees ($451,529.74 - $1,507.50 = $450,022.24) by fifty percent; leaving a remaining amount of $225,011.12.

The Lottery is also seeking to have the fee award reduced by $25,877.50 to exclude the attorney fees associated with preparing for the August 8, 2002 trial date, which was continued at the Hills' request. The Hills argue that this reduction should be rejected because the time spent preparing for the August trial was necessary for the eventual trial in this matter. The Court agrees.

The Lottery is further seeking to have the fee award reduced by $10,745 to exclude fees charged by Laurence Zielke before he entered an appearance as counsel of record on December 2, 2002, since KRS 344.450 specifically reads "a reasonable fee for the plaintiff's attorney of record." The Hills contend that it would have been unethical for Mr. Zielke to walk into Court without examining the case and discussing it with his clients. The Court finds that the language in KRS 344.450 does not prevent the plaintiff's attorney of record from recovering fees spent on the case prior to appearing as counsel of record.

The Lottery is also seeking to have the fee award reduced by $12,051.25 to exclude the attorney fees associated with the Hills' futile appeal of a non-final order. The Court agrees with the Lottery that said reduction in the attorney fee award is proper under such circumstances. Thus, the Court finds that a reasonable attorney fee in this case is $212,959.87 ($225,011.12 - $12,051.25 = $212,959.87).

Lastly, the Lottery argues that it is a state agency and is exempt from paying interest on judgments. The Hills disagree and argue that the Lottery is a municipal corporation and not a state

4

agency performing the services of central government.

In <u>Kentucky Department of Corrections v. McCullough</u>, Ky., 123 S.W.3d 130 (2004), the Supreme Court of Kentucky held that interest could not be awarded against the Commonwealth or its agencies in connection with a judgment obtained under the KCRA. Thus, the issue is whether or not the Lottery is considered a state agency.

KRS 154A.020 reads, in relevant part, as follows:

There is hereby created and established a state lottery which shall be administered by an independent, de jure municipal corporation and political subdivision of the Commonwealth of Kentucky which shall be a public body corporate and politic to be known as the Kentucky Lottery Corporation.

The Lottery is administered by an eight-member board of directors, who are appointed by the Governor but act autonomously and can only be removed for cause. See KRS 154A.030. As such, the Lottery is not under the control of the central state government. Furthermore, pursuant to KRS 154A.140, the Lottery is to be self-sustaining and self-funded.

Under the standard set forth in <u>Kentucky Center for the Arts Corporation v. Berns</u>. Ky., 801 S.W.2d 327 (1990), the court finds that the Lottery is not exempt from paying post-judgment interest under KRS 360.040. as it is a municipal corporation rather than a state governmental agency.

Based upon the evidence presented by the Lottery at a hearing before the Court on October 11, 2004, post-judgment interest will be awarded at the rate of six percent rather than twelve percent.

Therefore, the Court enters the following Order:

ORDER

IT IS HEREBY ORDERED AND ADJUDGED that:

(1) Plaintiff, Kimberly G. Hill, is awarded a judgment against the Defendant, Kentucky

5

Lottery Corporation, for retaliatory discharge in the amount of $120,000.00, with post-judgment interest thereon at the rate of six percent per annum until paid;

(2) Plaintiff, Robert W. Hill, is awarded a judgment against the Defendant, Kentucky Lottery Corporation, for retaliatory discharge in the amount of $132,500.00, with post-judgment interest thereon at the rate of six percent per annum until paid; and

(3) Plaintiffs, Kimberly G. Hill and Robert W. Hill, are awarded a reasonable attorney fee in the amount of $212,959.87 against Defendant, Kentucky Lottery Corporation.

DATED this _____ day of December, 2004.

STEPHEN P. RYAN, JUDGE
Jefferson Circuit Court

ENTERED IN COURT
DEC 2 8 2004
_____, CLERK
By _____
Deputy Clerk

cc:   Keith B. Hunter and Laurence J. Zielke
      Jan M. West and Kurt A. Scharfenberger

6

Citizens Union Secondary Market ☎ 5026475102     06/11/03   11:06 🏚 :02/02 NO:204
Case 08-32576-thf Doc 79-1 Filed 04/01/10   Entered 04/01/10 12:32:32   Page 31   P.02
of 39

INTERNAL REVENUE SERVICE
Washington, DC 20224

**SMALL BUSINESS / SELF-EMPLOYED DIVISION**

Date: June 6, 2003

Bornstein & Oppenheimer
950 Breckinridge Ln, Suite 40
Louisville, Ky 40207

Gail King, Tax Examiner
ID number 61-02003

Dear Bornstein & Oppenheimer:

A Notice of Federal Tax Lien was filed in Jefferson, Louisville, KY for the liabilities listed
below on Keith B Hunter, 1420 S 4th Apt 3, Louisville, Ky 40269.

| Type Of Tax | Tax Period | Identifying Number | Unpaid Balance | Statutory Additions to: 06/13/2003) | | |
|---|---|---|---|---|---|---|
| | | | | Interest | Penalty | Total |
| 1040 | 199312 | 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 | $3,336.68 | $ 2,364.29 | $ 702.42 | $6,403.39 |
| 1040 | 199412 | 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 | 4,538.78 | 4,221.65 | 1,103.82 | $9,864.25 |
| 1040 | 199512 | 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 | 7,485.44 | 5,488.99 | 1,691.04 | 14,665.47 |

The amount needed to release the lien is $ 30,933.11. A Certificate of Release of Federal
Tax Lien will be issued immediately only if payment is received by 06/13/2003 with:
1. Cash; or
2. Certified or cashier's check; or
3. Treasurers check drawn on a national/state bank or trust company; or
4. Postal or bank money order

If the payment is made in any other form, the release will be delayed for 30 days or until
evidence is furnished that the funds have been transferred.

Please make payment payable to the United States Treasury and send it to:
Internal Revenue Service, Attention: Lien Unit
600 MLK Jr Place, Room 625
Louisville, KY 40202

Sincerely yours,

Gail King
Lien Technician
For Pam Reistenberg, Manager
502 572-2216
502 572-2203 fax

6

## Settlement Statement

| | 4. [ ] VA | 5. [ ] Conv. Ins. | | |
|---|---|---|---|---|
| | 6. File Number: 21705 | 7. Loan Number | | |
| | 8. Mortgage Ins. Case No. | | | |

**C. Note:** This form is furnished to give you a statement of actual settlement costs. Amounts paid to and by the settlement agent are shown. Items marked ("POC") were paid outside the closing: they are shown here for information purposes and are not included in the totals.

**D. Name of Borrower:** Keith B. Hunter, 1420 S. 4th Street, Louisville, KY 40208

**E. Name of Seller:** Kiwi Land Trust, Wayne P. Gallavin, Trustee, 1156 Bardstown Road, Louisville, KY 40204    TIN:

**F. Name of Lender:** Citizens Union Bank

**G. Property Location:** 1420 S 4th Street, Louisville, KY 40208

**H. Settlement Agent:** Bornstein & Oppenheimer, PLLC (502) 895-8787    TIN:  61-1048725
**Place of Settlement:** 950 Breckinridge Lane, Suite 40, Louisville, KY 40207

**I. Settlement Date:** 6/12/2003    **Proration Date:** 6/12/2003

| J. Summary of Borrower's Transaction | | K. Summary of Seller's Transaction | |
|---|---|---|---|
| **100.** Gross amount due from borrower: | | **400.** Gross amount due to seller: | |
| **101.** Contract sales price | 270,000.00 | **401.** Contract sales price | 270,000.00 |
| **102.** Personal property | | **402.** Personal property | |
| **103.** Settlement charges to borrower (line 1400) | 24,011.60 | **403.** | |
| **104.** Prepayment Penalty | 7,500.00 | **404.** Prepayment Penalty | 7,500.00 |
| **105.** Interest | 88.40 | **405.** Interest | 88.40 |
| Adjustments for items paid by seller in advance: | | Adjustments for items paid by seller in advance: | |
| **106.** City/town taxes | | **406.** City/town taxes | |
| **107.** County taxes | | **407.** County taxes | |
| **108.** Assessments | | **408.** Assessments | |
| **109.** | | **409.** | |
| **110.** | | **410.** | |
| **111.** | | **411.** | |
| **112.** | | **412.** | |
| **120.** Gross amount due from borrower: | 301,600.00 | **420.** Gross amount due to seller: | 277,588.40 |
| **200.** Amounts paid by or in behalf of the borrower: | | **500.** Reduction in amount due to seller: | |
| **201.** Deposit or earnest money | | **501.** Excess deposit (see instructions) | |
| **202.** Principal amount of new loan(s) | 301,600.00 | **502.** Settlement charges to seller (line 1400) | 494.00 |
| **203.** Existing loan(s) taken subject to | | **503.** Existing loan(s) taken subject to | |
| **204.** | | **504.** Payoff of first mortgage loan Payoff Gus Goldsmith | 271,898.70 |
| **205.** | | **505.** Payoff of second mortgage loan | |
| **206.** | | **506.** | |
| **207.** | | **507.** | |
| **208.** | | **508.** | |
| **209.** | | **509.** | |
| Adjustments for items unpaid by seller: | | Adjustments for items unpaid by seller: | |
| **210.** City/town taxes | | **510.** City/town taxes | |
| **211.** County taxes | | **511.** County taxes | |
| **212.** Assessments | | **512.** Assessments | |
| **213.** | | **513.** | |
| **214.** | | **514.** | |
| **215.** | | **515.** | |
| **216.** | | **516.** | |
| **217.** | | **517.** | |
| **218.** | | **518.** | |
| **219.** | | **519.** | |
| **220.** Total paid by/for borrower: | 301,600.00 | **520.** Total reduction in amount due seller: | 272,392.70 |
| **300.** Cash at settlement from/to borrower: | | **600.** Cash at settlement to/from seller: | |
| **301.** Gross amount due from borrower (line 120) | 301,600.00 | **601.** Gross amount due to seller (line 420) | 277,588.40 |
| **302.** Less amount paid by/for borrower (line 220) | 301,600.00 | **602.** Less total reduction in amount due seller (line 520) | 272,392.70 |
| **303.** CASH ( )FROM ( )TO BORROWER | 0.00 | **603.** CASH (X)FROM (X)TO SELLER | 5,195.70 |

SUBSTITUTE FORM 1099 SELLER STATEMENT - The information contained in Blocks E, G, H and I on line 401 (or, if line 401 is asterisked, lines 403 and 404), 406, 407 and 408-412 (applicable part of buyer's real estate tax reportable to the IRS) is important tax information and is being furnished to the Internal Revenue Service. If you are required to file a return, a negligence penalty or other sanction will be imposed on you if this item is required to be reported and the IRS determines that it has not been reported.

7

| | | | Funds at Settlement | Funds at Settlement |
|---|---|---|---|---|
| 701. | $ | | | |
| 702. | $ | | | |
| 703. | Commission paid at settlement | | | |
| 704. | | | | |
| **800.** | **Items payable in connection with loan** | | | |
| 801. | Loan origination fee | to  Citizens Union Bank    ( 1%) | 3,016.00 | |
| 802. | Loan discount | | | |
| 803. | Appraisal fee | to  Citizens Union Bank | 350.00 | |
| 804. | Credit report | | | |
| 805. | Lender's inspection fee | | | |
| 806. | Mortgage insurance application fee | | | |
| 807. | Assumption fee | | | |
| 808. | Flood Certification | to  Southwestern Financial | 16.50 | |
| 809. | Flood Review | to  Southwestern Financial | 6.00 | |
| 810. | | | | |
| 811. | | | | |
| 812. | | | | |
| **900.** | **Items required by lender to be paid in advance** | | | |
| 901. | Interest from | | | |
| 902. | Mortgage insurance premium for | | | |
| 903. | Hazard insurance premium for | | | |
| 904. | | | | |
| 905. | | | | |
| **1000.** | **Reserves deposited with lender** | | | |
| 1001. | Hazard insurance | | | |
| 1002. | Mortgage insurance | | | |
| 1003. | City property taxes | | | |
| 1004. | County property taxes | | | |
| 1005. | Annual assessments (maint.) | | | |
| 1006. | | | | |
| 1007. | | | | |
| 1008. | Escrow Balance Credit | | | |
| 1009. | Aggregate Adjustment | | | |
| **1100.** | **Title charges** | | | |
| 1101. | Settlement or closing fee | to  Bornstein & Oppenheimer, PLLC | 265.00 | 100.00 |
| 1102. | Abstract or title search | | | |
| 1103. | Title examination | to  Bornstein & Oppenheimer, PLLC | 359.00 | |
| 1104. | Title insurance binder | | | |
| 1105. | Document preparation | to  Bornstein & Oppenheimer, PLLC | | 100.00 |
| 1106. | Notary fees | | | |
| 1107. | Attorney's fees to | Bornstein & Oppenheimer, PLLC | 350.00 | |
| | includes above items no.: | | | |
| 1108. | Title insurance | | | |
| | includes above items no.: | | | |
| 1109. | Lender's coverage | | | |
| 1110. | Owner's coverage | | | |
| 1111. | 5% Premium Tax | | | |
| 1112. | Express/Courier Fee | to  Bornstein & Oppenheimer, PLLC | | 15.00 |
| 1113. | | | | |
| **1200.** | **Government recording and transfer charges** | | | |
| 1201. | Recording fees: | Deed $12.00  Mortgage $38.00  Release $9.00 | 50.00 | 9.00 |
| 1202. | City/county tax/stamps: | | | |
| 1203. | State tax/stamps: | Deed $270.00 | | 270.00 |
| 1204. | | | | |
| 1205. | | | | |
| 1206. | | | | |
| **1300.** | **Additional settlement charges** | | | |
| 1301. | Survey | | | |
| 1302. | Pest inspection | | | |
| 1303. | Home Buyers Warranty | | | |
| 1304. | 2002 County Taxes/ | to  Jefferson County Clerk | 3,380.96 | |
| 1305. | 2002/2003 City Taxes/ | to  City of Louisville | 1,218.14 | |
| 1306. | ID Number 61-02003/Partial Paym to  United States Treasury | | 15,000.00 | |
| **1400.** | Total settlement charges (entered on lines 103, section J and 502, section K) | | 24,011.60 | 494.00 |

# Memorandum

TO:         Keith B. Hunter

FROM:       Edwin P. Osborne

DATE:       March 31, 2010

SUBJECT:    Your 2005 Income Tax Returns (IRS & KY)

I took another look at your 2005 income tax returns and now communicate the following for your consideration/action:

1. Due to a clerical error a **label** "116 Smithfld PA" appeared on Form 1040 Schedule E, but no amounts were associated with this label. No depreciation whatsoever was taken on the property listed as "116 Smithfld PA". Notice that there are no amounts in the second column of the Schedule E. There was no consequence whatsoever for having that "label" appear on that form.

2. The depreciation of $4,129 on your tax return for "1449 S 4 St" flowed to your tax return from IRS Form 8582 – Passive Activity Loss Limitations. In short, many of your losses from this property were deferred by regulation while you owned this property. By IRS regulation, losses that are limited are accumulated until the property is sold or otherwise disposed of. When the property is finally taken off your tax return, there will of necessity be a reconciliation of basis which will include depreciation and recapture of any excess depreciation. Since your loss on this property was so great, the depreciation flowing from the 8582 will "wash" and this one will adjust itself. It was my understanding from memory that you may have had some additional recourse through litigation that had not fully run its course; accordingly, the final basis reconciliation was deferred.

**The Bottom Line:** I do not recommend amending either 2005 tax return at this time because the statutory period for doing so has passed and the anecdotal item in #1 above was not specifically keyed by the IRS when they recorded your tax return.

8

# Memorandum

TO:        Keith B. Hunter

FROM:      Edwin P. Osborne

DATE:      March 31. 2010

SUBJECT:   Your 2006 Income Tax Returns (IRS & KY)


I took another look at your 2006 income tax returns and now communicate the following for your consideration/action:

1. Due to a clerical error a label "116 Smithfld PA" appeared on Form 1040 Schedule E, but no amounts were associated with this label.  No depreciation whatsoever was taken on the property listed as "116 Smithfld PA".    Notice that there are no amounts in the second column of the Schedule E. There was no consequence whatsoever for having that "label" appear on that form.

2. The depreciation of $4,129 on your tax return for "1449 S 4 St" flowed to your tax return from IRS Form 8582 – Passive Activity Loss Limitations.  In short, many of your losses from this property were deferred by regulation while you owned this property.  By IRS regulation, losses that are limited are accumulated until the property is sold or otherwise disposed of.   When the property is finally taken off your tax return. there will of necessity be a reconciliation of basis which will include depreciation and recapture of any excess depreciation.   Since your loss on this property was so great, the depreciation flowing from the 8582 will "wash" and this one will adjust itself. It was my understanding from memory that you may have had some additional recourse through litigation that had not fully run its course; accordingly, the final basis reconciliation was deferred.  The accumulated losses and basis reconciliation was recorded in the 2007 Income Tax Return.  This is a conservative approach allowing maximum time and opportunity for you to recoup the losses rather than recapture depreciation then reverse it.

**The Bottom Line:**  I do not recommend amending either 2006 tax return at this time because the statutory period for doing so has passed and the anecdotal item in #1 above was not specifically keyed by the IRS when they recorded your tax return.

TO:            Keith B. Hunter

FROM:          Edwin P. Osborne

DATE:          March 31, 2010

SUBJECT:       Your 2007 Income Tax Returns (IRS & KY)


I took another look at your 2007 income tax returns and now communicate the following for your consideration/action:

1. Due to a clerical error a label "116 Smithfld PA" appeared on Form 1040 Schedule E, but no amounts were associated with this label. No depreciation whatsoever was taken on the property listed as "116 Smithfld PA". Notice that there are no amounts in the second column of the Schedule E. There was no consequence whatsoever for having that "label" appear on that form.

2. The depreciation of $2,054 on your tax return for "1449 S 4 St" flowed to your tax return from IRS Form 8582 – Passive Activity Loss Limitations. In short, many of your losses from this property were deferred by regulation while you owned this property. By IRS regulation, losses that are limited are accumulated until the property is sold or otherwise disposed of. Effective 6/30/07, the property was finally taken off your tax return. At that time, there was a reconciliation of basis which included accumulated depreciation. It was my understanding from memory that you ceased attempting or considering recourse through litigation; accordingly, the final basis reconciliation was deferred until mid-year 2007—thus the 6/30 date.

**The Bottom Line:** I do not recommend amending either 2007 tax return at this time because the anecdotal item in #1 above was not specifically keyed by the IRS when they recorded your tax return and the 1449 issue was recognized in the tax return as filed.

# Memorandum

TO:         Keith B. Hunter

FROM:       Edwin P. Osborne

DATE:       March 31, 2010

SUBJECT:    Your 2008 Income Tax Returns (IRS & KY)


I took another look at your 2008 income tax returns and now communicate the following for
your consideration/action:

3.  Due to a clerical error a **label** "116 Smithfld PA" appeared on Form 1040 Schedule E,
    but no amounts were associated with this label.  No depreciation whatsoever was taken
    on the property listed as "116 Smithfld PA".    Notice that there are no amounts in the
    second column of the Schedule E. There was no consequence whatsoever for having that
    "label" appear on that form.

4.  You will remember that effective 6/30/07, the property was finally taken off your tax
    return.  At that time, there was a reconciliation of basis which included accumulated
    depreciation.   It was my understanding from memory that you ceased attempting or
    considering recourse through litigation: accordingly, the final basis reconciliation was
    deferred until mid-year 2007—thus the 6/30 date.

5.  The depreciation of $12 on your 2008 tax return for "1449 S 4 St" flowed to your tax
    return by virtue of an entry to record the disposition of improvements to the porch
    overhang that was omitted from the 6/30/07 disposition entry for "1449".  This last entry
    was made effective 1/1/08, so the $12 represents one day's depreciation.

**The Bottom Line:** I do not recommend amending either 2008 tax return at this time because the
anecdotal item in #1 above was not specifically keyed by the IRS when they recorded your tax
return and the 1449 issue was handled as described.

NO. 07CI-10539

JEFFERSON CIRCUIT COURT
DIVISION TWO
JUDGE JAMES M. SHAKE

CITIZENS UNION BANK

PLAINTIFF

VS.                          ORDER AND WRIT OF POSSESSION

KEITH B. HUNTER, et al.                                    DEFENDANTS
1420 South Fourth Street
Louisville, Kentucky 40204

\*\*\* \*\*\* \*\*\*

This cause having come before this Court on Cross-Motion of
the Plaintiff and Purchaser herein, Citizens Union Bank (herein-
after referred to as the Plaintiff), by counsel, and the Defen-
dant, Keith B. Hunter (hereinafter referred to as the Defendant
Hunter), Pro Se, and this Court having confirmed the Judicial
Sale and Commissioner's Report of Sale conducted and filed in
the within action on April 14, 2009, and April 17, 2009, re-
spectively, and Plaintiff being entitled to possession of the
subject real property, and this Court having considered the
arguments of the parties hereto, and being otherwise suffi-
ciently advised, IT IS ORDERED AND ADJUDGED --

That the Sheriff of Jefferson County, Kentucky, in the name
of the Commonwealth of Kentucky, is commanded with the power of
the County, if necessary, to put Plaintiff in possession of the
premises presently and wrongfully occupied and detained by the
Defendant Hunter, and/or any and all other occupants, by
ejecting the Defendant Hunter and any and all other occupants of
said premises therefrom.  Said premises are located at and known
as 1420 South Fourth Street, Louisville, Kentucky 40202.  Said

9

Sheriff will make due return of this Writ of this Court within twenty (20) days from the issuance thereof.

_____          _____

**DATE**                                    **JUDGE**

s:\temp files\patti\mydocuments\cub\hunter, keith b\order and writ of possession.doc



2